DISCIPLINARY COUNSEL *v.* MARK VILLENEUVE
(AC 31841)

Lavine, Alvord and Borden, Js.

Argued December 1, 2010—officially released February 22, 2011

*Corey J. Brinson*, with whom, on the brief, was *Mark Villeneuve*, pro se, for the appellant (defendant).

*Patricia A. King*, with whom was *Mark A. Dubois*, chief disciplinary counsel, for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendant, Mark Villeneuve, appeals from the judgment of the trial court suspending his license to practice law. On appeal, he claims that, inter alia, (1) the court improperly denied his motion to dismiss for lack of subject matter jurisdiction, (2) the court improperly suspended his license prior to ruling upon his motion to dismiss for lack of personal jurisdiction, and (3) the court and the statewide grievance committee (grievance committee) violated his due process rights because (a) the grievance complaint was not executed under "penalties of false statement," thus violating Practice Book § 2-32, and (b) he was improperly adjudicated for a violation of rule 8.4 (3) of the Rules of Professional Conduct when the grievance complaint did not allege that rule. We affirm the judgment of the trial court.

The record discloses the following relevant facts and procedural history. During 2008, the defendant submitted an application for a staff attorney position with the state workers' compensation commission (commission). After interviewing the defendant, reviewing his resume and references and attempting to verify the information therein, the commission's human resources director, Sandra C. Cunningham, suspected a number of misrepresentations. She brought her concerns to the attention of the grievance committee in a letter dated May 6, 2008 (Cunningham letter). The Cunningham letter identified the following discrepancies in the defendant's application: (1) he claimed to be presently employed by the Law Office of Jean Smith, but Cunningham could find no such attorney or office in existence; (2) his resume indicated that he graduated from Western New England College School of Law cum laude, when in fact he did not graduate with honors; (3) his resume indicated that he was an assistant note editor

for his school's law review, when the school had no record of his participation on law review; (4) he listed a reference at an address that did not exist, and Cunningham was contacted by two references who "sounded very similar on the phone," causing her to "doubt the legitimacy of the reference information"; and (5) although the Law Office of Jean Smith apparently did not exist, the defendant had worked for another law firm during the time that he allegedly was working for Smith and did not indicate that fact on his application or resume.

The grievance committee referred the Cunningham letter to the Hartford-New Britain judicial district grievance panel (Hartford panel). The Hartford panel sent the defendant a copy of the Cunningham letter and the grievance committee's referral. The defendant replied that he had "absolutely no knowledge of this position, application, resume, interview or anything else that occurred regarding this incident as described by attorney Cunningham" because his identity had been stolen. The Hartford panel requested further information concerning the alleged identity theft, but the defendant failed to respond to the panel's inquiry and never provided supplemental information substantiating his claim of identity theft. In light of the defendant's failure to provide any evidence of his identity having been stolen or an alternative explanation for the discrepancies in his application and resume, the Hartford panel filed a formal grievance complaint alleging violations of rules 8.1 (1),[1] 8.2 (a)[2] and 8.4

---

[1] Rule 8.1 of the Rules of Professional Conduct provides in relevant part: "[A] lawyer . . . in connection with a disciplinary matter, shall not:

"(1) Knowingly make a false statement of material fact . . . ."

[2] Rule 8.2 of the Rules of Professional Conduct provides in relevant part: "(a) A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office."

(4)[3] of the Rules of Professional Conduct, which was sent to the grievance committee and subsequently referred to the Windham judicial district grievance panel (Windham panel).

The defendant was provided with a copy of this grievance complaint. Instead of filing an answer, he filed a motion to dismiss for lack of subject matter jurisdiction. Upon review, the Windham panel issued a finding of probable cause that the defendant had violated rules 8.4 (3)[4] and 8.4 (4) and filed its record with the grievance committee.[5]

The reviewing committee scheduled a hearing on the grievance complaint.[6] At the defendant's request, the reviewing committee rescheduled the hearing. Instead of attending the rescheduled hearing, the defendant mailed written "testimony" that stated that he was "not able to travel all the way to Middletown, CT in order to attend," and again alleged, inter alia, that his identity had been stolen. The defendant did not provide probative evidence to substantiate his claim and his failure to attend the hearing made it impossible for the reviewing

---

[3] Rule 8.4 of the Rules of Professional Conduct provides in relevant part: "It is professional misconduct for a lawyer to . . .

"(4) Engage in conduct that is prejudicial to the administration of justice . . . ."

[4] Rule 8.4 of the Rules of Professional Conduct provides in relevant part: "It is professional misconduct for a lawyer to . . .

"(3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation . . . ."

[5] The Windham panel determined that there was probable cause to support the following findings of fact: the defendant (1) submitted a false application for employment, (2) misrepresented that he had graduated from law school cum laude and had participated on the school's law review, (3) misrepresented to the panel that he had been a victim of identity theft and that he had filed a complaint with the police, and (4) failed to address the substantive charges, leaving them unrebutted.

[6] Pursuant to Practice Book § 2-35 (c), after the grievance panel determined that probable cause existed that the defendant was guilty of misconduct, "the reviewing committee shall hold a hearing on the complaint. . . ."

committee to confirm any mistake in identity. The reviewing committee found that, because the defendant had failed to appear and to testify under oath despite being given a two month continuance, "little weight" should be given to his claims of identity theft. The reviewing committee found by clear and convincing evidence that, because the employment application contained misrepresentations, the defendant had violated rule 8.4 (3) of the Rules of Professional Conduct. It directed disciplinary counsel "to file a presentment against the [defendant] in the Superior Court, for the imposition of whatever discipline is deemed appropriate." Two weeks later, after the defendant filed a request for review, the grievance committee affirmed the decision of the reviewing committee.[7]

On November 5, 2009, the plaintiff filed this presentment with the Superior Court, outlining the previously mentioned factual and procedural background. The defendant filed a motion to dismiss, claiming lack of subject matter jurisdiction, and a motion for summary judgment, claiming that rules 8.4 (3) and 8.4 (4) of the Rules of Professional Conduct are unconstitutionally broad and void for vagueness. Both motions were denied during a December 21, 2009 hearing.

The defendant filed a second motion to dismiss claiming lack of personal jurisdiction because the disciplinary committee failed to serve him properly with the presentment.[8] The second motion to dismiss was set

___

[7] Pursuant to Practice Book §§ 2-35 (g) and 2-36, within thirty days of the issuance to the parties of the reviewing committee's final decision, the defendant may submit to the grievance committee a request for review of the decision, and the grievance committee must review the previous decision and issue its own written decision.

[8] The disciplinary counsel had notified the defendant during an e-mail exchange between the parties that he would be served the presentment via United States mail. The defendant did not object at that time. He argued in his reply brief to the plaintiff's objection to his motion to dismiss for lack of subject matter jurisdiction that he "relied upon [the plaintiff's] representations that the proper service of process was to be made via service to his [post office] box."

for hearing on January 22, 2010, when the defendant again failed to appear but instead, on the same date, filed via facsimile a "Notice that Hearing Cannot Proceed Prior to Adjudication of Motion to Dismiss." The hearing proceeded in the defendant's absence.[9] The court denied the defendant's second motion to dismiss and also issued the following order: "The court suspends the [defendant] from the practice of law without prejudice because he failed to appear at the presentment. The court will consider reinstatement if [the defendant] appears and establishes good cause for his failure to appear at the hearing. The court will not consider the pendency of the . . . motion to dismiss as being good cause. If [the defendant] wanted to assert the necessity for ruling on that motion before considering the presentment, he should have appeared and could have argued the motion and, possibly, obtained a ruling at that time."[10]

On March 16, 2010, the court articulated its legal and factual basis for denying all three motions. It ruled that, inter alia, (1) the motion to dismiss for lack of subject matter jurisdiction was denied because the court had the inherent authority to regulate attorney conduct, (2) the motion for summary judgment was denied because the defendant failed to satisfy the burden of showing the nonexistence of any issue of material fact, and (3) the motion to dismiss for lack of personal jurisdiction was denied because the defendant waived this claim when he filed a motion contesting the issues. The court declined to articulate further the suspension order because its reasoning was "clearly stated on the

---

[9] This court was not provided with a transcript of that hearing.

[10] This court ordered the trial court to articulate whether, in suspending the defendant's license on January 22, 2010, it also denied the defendant's second motion to dismiss. On August 12, 2010, the trial court articulated that the second motion had been denied on January 22, 2010, when it suspended the defendant's license.

record." Further, the court stated that "[h]ad the [defendant] appeared, on that date or a subsequent date, the court would have entertained his motion to vacate suspension and would have held a hearing on the merits. But the [defendant] has never appeared at any proceeding." In light of this factual and procedural history, we turn to the arguments of the parties.

I

The defendant argues that the court improperly denied his first motion to dismiss for lack of subject matter jurisdiction. He claims, inter alia, that the grievance complaint was defective, the Hartford panel was biased and acted in an arbitrary and capricious manner, the grievance committee's findings of fact were clearly erroneous, and the grievance committee did not perform a fair, intelligent and equitable review pursuant to Practice Book § 2-38. We disagree.

We begin by setting forth our standard of review. "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . Because such a determination involves a question of law, our review is plenary. . . . Where a decision as to whether a court has subject matter jurisdiction is required, every presumption favoring jurisdiction should be indulged. . . . Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . Fixing the qualifications for, as well as admitting persons to, the practice of law in this state has ever been an exercise of judicial power. . . .

"The Superior Court possesses inherent authority to regulate attorney conduct and to discipline the members of the bar. . . . The judiciary has the power to admit attorneys to practice and to disbar them . . . to fix the qualifications of those to be admitted . . . and to define what constitutes the practice of law. . . . In the exercise of its disciplinary power, the Superior Court has adopted the [Rules of Professional Conduct]." *Statewide Grievance Committee* v. *Burton*, 88 Conn. App. 523, 528–29, 871 A.2d 380 (2005), aff'd, 282 Conn. 1, 917 A.2d 966 (2007).

In light of the court's inherent power to regulate attorney conduct, the court's denial of the motion to dismiss for lack of subject matter jurisdiction was not improper.

## II

The defendant also claims that the court improperly suspended his license prior to ruling on his motion to dismiss for lack of personal jurisdiction. We decline to consider this claim.

In this case, the record is inadequate for review because on January 22, 2010, there was a hearing, at which time the trial court ruled on the motion to dismiss for lack of personal jurisdiction. We were not provided with a copy of the transcript from that hearing because the defendant did not request that a single transcript be provided to this court. The duty to provide this court with a record adequate for review rests with the appellant. See Practice Book § 61-10;[11] *Ng* v. *Wal-Mart Stores*,

---

[11] Practice Book § 61-10 provides: "It is the responsibility of the appellant to provide an adequate record for review. The appellant shall determine whether the entire trial court record is complete, correct and otherwise perfected for presentation on appeal. For purposes of this section, the term 'record' is not limited to its meaning pursuant to Section 63-4 (a) (2), but includes all trial court decisions, documents and exhibits necessary and appropriate for appellate review of any claimed impropriety."

*Inc.*, 122 Conn. App. 533, 537, 998 A.2d 1214 (2010); *Forrestt* v. *Koch*, 122 Conn. App. 99, 111, 996 A.2d 1236 (2010); *Chase Manhattan Bank/City Trust* v. *AECO Elevator Co.*, 48 Conn. App. 605, 607, 710 A.2d 190 (1998). Without the necessary factual and legal conclusions furnished by the trial court, any decision made by us respecting the defendant's claims as to timing would be entirely speculative. See *Chase Manhattan Bank/City Trust* v. *AECO Elevator Co.*, supra, 608–609. Thus, we decline to review this claim.

## III

The defendant also claims that the grievance procedure that led to his presentment and the court's subsequent suspension of his license to practice law violated his constitutional right to due process. Specifically, he argues, inter alia, that he was denied due process[12] because (1) the grievance complaint was not filed "under penalties of false statement" as required by Practice Book § 2-32 (a)[13] and (2) he was improperly adjudicated for a violation of rule 8.4 (3) of the Rules of Professional Conduct when the initial grievance complaint did not cite that rule. We disagree and will address both issues in turn.

First, we set out the appropriate standard of review for each of these due process claims. "Because a license

---

[12] The defendant also alleges that there has been a violation of equal protection. Practice Book § 60-5 provides in relevant part that this "court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . ." This rule against considering claims not advanced at trial applies to constitutional issues. *Statewide Grievance Committee* v. *Whitney*, 227 Conn. 829, 846, 633 A.2d 296 (1993). Because this claim was not distinctly raised at trial, we decline to afford it consideration.

[13] Practice Book § 2-32 (a) provides in relevant part: "Any person, including disciplinary counsel, or a grievance panel on its own motion, may file a written complaint, executed under penalties of false statement, alleging attorney misconduct whether or not such alleged misconduct occurred in the actual presence of the court. . . ."

to practice law is a vested property interest and disciplinary proceedings are adversary proceedings of a quasi-criminal nature, an attorney subject to discipline is entitled to due process of law." (Internal quotation marks omitted.) *Kucej* v. *Statewide Grievance Committee*, 239 Conn. 449, 462, 686 A.2d 110 (1996), cert. denied, 520 U.S. 1276, 117 S. Ct. 2457, 138 L. Ed. 2d 214 (1997).

"Due process does not mandate a particular procedure but rather requires only that certain safeguards exist in whatever procedural form is afforded. . . . In [presentment] proceedings such as this a defendant is entitled to notice of the charges against him, to a fair hearing, and a fair determination, in the exercise of a sound judicial discretion, of the questions at issue, and to an appeal to [an appellate] court for the purpose of having it determined whether or not he has in some substantial manner been deprived of such rights." (Citation omitted; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Presnick*, 215 Conn. 162, 169, 575 A.2d 210 (1990).

"The ultimate question is whether he is a fit person to be longer allowed the privileges of being an attorney. . . . His relations to the tribunal and the character and purpose of the inquiry are such that unless it clearly appears that his rights have in some substantial way been denied him, the action of the court will not be set aside upon review." (Internal quotation marks omitted.) Id., 172–73.

A

With these principles in mind, we turn to the defendant's claim that his due process rights were violated because the grievance complaint did not include the language "executed under penalties of false statement" as required under Practice Book § 2-32 (a).[14] We reject

[14] We disagree with the defendant's suggestion that the Cunningham letter had to comply with Practice Book § 2-32 because that letter was not a formal complaint.

this claim in its entirety because the grievance complaint *did in fact* include such language.[15]

## B

In addition, the defendant claims that his due process rights were violated because the court improperly adjudicated a violation of rule 8.4 (3) of the Rules of Professional Conduct when the initial grievance complaint did not allege a violation of that rule. We disagree.

"This court long ago set forth the standard that a complaint for misconduct must be sufficiently intelligible and informing to advise the court of the matter complained of, and the attorney of the accusation or accusations made against him, to the end that . . . the latter may prepare to meet the charges against him. . . . If this condition is satisfied, so that the accused is fully and fairly apprised of the charge or charges made, the complaint is sufficient to give him an opportunity to be fully and fairly heard . . . . [W]e [have] stated that the presentment need not refer to specific sections [of the Rules of Professional Conduct] . . . . Rather, reference to a specific rule simply assists the trial court in drawing its conclusions as to whether, under the totality of the circumstances, professional misconduct occurred. . . . [A] court may find a violation even if a specific rule has not been cited so long as the attorney subject to discipline has been accorded the full measure of due process required under the

---

[15] The cover sheet to the grievance complaint, form JD-GC-06, was not appended to the presentment or included in the trial court file. This court has the authority to take judicial notice of files of the trial court in the same or other cases. *State* v. *Adams*, 117 Conn. App. 747, 749 n.3, 982 A.2d 187 (2009); see also *Oliphant* v. *Commissioner of Correction*, 274 Conn. 563, 579 n.17, 877 A.2d 761 (2005). The grievance committee is an " 'arm of the court' "; *Sobocinski* v. *Statewide Grievance Committee*, 215 Conn. 517, 526, 576 A.2d 532 (1990); and thus, it is within this court's purview to take judicial notice of its file. We therefore take judicial notice of that file and conclude that the grievance complaint was "executed under penalties of false statement . . . ." Practice Book § 2-32 (a).

particular circumstances of the case." (Citations omitted; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Botwick*, 226 Conn. 299, 310, 627 A.2d 901 (1993).

It is undisputed that the grievance complaint raised only concerns of violations of rules 8.1 (1), 8.2 (a) and 8.4 (4) but that subsequently the Windham panel found probable cause for a violation of rule 8.4 (3). Nonetheless, in light of the above standard and our thorough review of the record, we conclude that the defendant's right to due process was not implicated when a violation of rule 8.4 (3) was not explicitly alleged in the grievance complaint.

The defendant argues that the failure to allege a violation of rule 8.4 (3) in the grievance complaint breaches Practice Book § 2-32 (j), which provides in relevant part that "[t]he panel shall not make a probable cause determination based, in full or in part, on a claim of misconduct not alleged in the complaint without first notifying the [defendant] that it is considering such action and affording the [defendant] the opportunity to be heard." This rule does not, as the defendant contends, require that the panel provide notification of every *rule* it is considering, but rather each claim of misconduct. In the present case, the factual basis underlying the allegations of misconduct remained unchanged throughout.

Further, the purpose of Practice Book § 2-32 (j) is to allow the defendant "an opportunity to be heard" as to each allegation. Practice Book § 2-32 (j); see W. Horton & K. Knox, 1 Connecticut Practice Series: Connecticut Superior Court Civil Rules (2011) § 2–32, authors' comments, p. 281. We agree with the court's finding that the defendant's claim that he had no opportunity to respond to the charge was contradicted directly by the record. In the present case, the defendant repeatedly

was provided with notice and an opportunity to respond. He was (1) contacted by the Hartford panel upon its receipt of the Cunningham letter, prior to a grievance complaint being filed, but he did not provide a substantive response to the allegations; (2) given a copy of the grievance complaint, but he never responded to the allegations except to file a motion to dismiss;[16] (3) notified of the Windham panel's finding of probable cause; (4) notified of a hearing before the reviewing committee on the grievance complaint, which was continued at his request, and which he failed to attend; (5) provided a copy of the decision by the reviewing committee finding that he was in violation of the rules and suggesting a presentment be filed; (6) provided the opportunity to, and did in fact, appeal the reviewing committee's decision to the grievance committee; (7) provided with a copy of the grievance committee's decision affirming the findings of the reviewing committee; (8) provided a copy of the presentment, (9) summoned to the court on December 21, 2009, to argue his motions to dismiss and for summary judgment, which hearing he failed to attend; and (10) summoned to the court again to address the presentment, which hearing he failed to attend.[17] Not once, at any of these many junctures, did the defendant dispute the underlying facts except to allege that his identity was stolen without substantiating the claim.[18]

[16] Failure to respond timely to the complaint is misconduct itself. *Daniels* v. *Statewide Grievance Committee*, 72 Conn. App. 203, 205 n.4, 804 A.2d 1027 (2002).

[17] As noted, the defendant had an abundance of opportunities to address the decision makers. Thus, we cannot conclude that, under the facts of this case, *any* of the due process allegations that can be gleaned from the defendant's brief could have, in some substantial manner, deprived the defendant of due process as would be required for us to reverse the decisions of the trial court.

[18] The trial court astutely noted that "[the defendant's] failure to attend any court or grievance proceeding related to this matter is truly puzzling in light of his identity theft defense. What better way to prove he was not the attorney who gave false information to Ms. Cunningham than appearing and allowing her to confirm that he was not that attorney?" At any of the

Not only did the defendant have the opportunity to be heard, but also he was *in fact* heard with respect to the very rule he now claims unfairly surprised him and violated his due process rights. As the court noted, in his written statement that was accepted as evidence by the reviewing committee during its *initial* hearing, the defendant explicitly addressed rule 8.4 (3) in a section entitled "Violations of Rules 8.4 (3) and 8.4 (4)."

Finally, because the presentment is reviewed by the court de novo, the defendant had the ability to challenge any allegation that was not stated in the grievance complaint during the presentment hearing. He chose not to attend that hearing in Superior Court. Accordingly, we agree with the court that the fact that the grievance complaint did not explicitly allege a violation of rule 8.4 (3) did not deprive the defendant of due process.

The judgment is affirmed.

In this opinion the other judges concurred.

proceedings, the defendant could have substantiated his special defense by simply appearing, which further undermines the possibility that the procedural issues raised by the defendant deprived him of his basic right to due process.